Argued June 17, decided August 11, rehearing denied October 6, 1908.

## OLSTON *v.* OREGON WATER POWER & RY. CO.

[96 Pac. 1095; 97 Pac. 538.]

EXECUTORS AND ADMINISTRATORS—POWERS OF—SETTLEMENT OF CLAIMS.

1. At common law an executor and administrator has absolute power of disposal of the personal effects of decedent and may compromise any claim.

SAME.

2. Since Section 1168, B. & C. Comp., prohibiting the sale of property by an administrator except on an order of the court, applies only to tangible property, and since Section 1211, authorizing the compounding of debts, applies only to those of insolvent debtors, the power of an administrator as to unliquidated claims for damages remains at common law, and he may liquidate and accept settlement of such a claim without authority from the county court.

DEATH—ACTIONS FOR DEATH—PERSONS ENTITLED TO SUE.

3. Under Sections 379, 381, B. & C. Comp., authorizing an action for negligent death by the personal representatives of decedent, etc., the heirs of the decedent have no remedy for damages for his death, and they have no direct interest in the claim therefor, and the amount recovered is the property of the estate of decedent.

RELEASE—EFFECT—QUESTION FOR JURY.

4. A release of a claim against a carrier for the death of a passenger, which stated that plaintiff, who was decedent's administrator, released "for myself, my heirs, executors, and administrators," etc., and which acknowledged payment of the liability of the carrier not only in plaintiff's own interest but in the interest of his mother, brother, and sisters, and that he was appointed administrator because he could not individually receipt for the payment, and which was signed by plaintiff as administrator of decedent, bound the estate, as it alone was entitled to receive the money paid. How-

ever, where the release was ambiguous, and it was doubtful whether decedent's estate was bound thereby, the question whether it was bound was for the jury.

EQUITY—JURISDICTION—FRAUD.

5. The general rule that courts of equity and courts of law have concurrent jurisdiction over fraud, is subject to the exception that, where the remedy at law is not adequate, resort may be had to equity.

FRAUD—RELIEF AT LAW.

6. The rule that law relieves against fraud negatively by preventing either a recovery or a defense founded upon an instrument induced by fraud, and that fraud may be pleaded at law when the relief sought is such as can be effected by a judgment is general as to all contracts not under seal; but at common law there is an exception to the rule in the case of sealed instruments.

RELEASE—EXECUTION AT COMMON LAW.

7. A release at common law must be under seal.

SAME—FRAUD.

8. At common law a release cannot be questioned in an action at law, except for fraud affecting its execution, and for fraudulent representations affecting the consideration, equity alone can give relief.

CONTRACTS—FRAUD—SEALED INSTRUMENTS.

9. Under Sections 686, 765, 767, B. & C. Comp., defining "primary evidence" as that which suffices for the proof of a particular fact until contradicted, declaring that a seal affixed to a writing is primary evidence, and that an agreement without a seal for the settlement of a controversy is as obligatory as if a seal were affixed, an instrument under seal may be attacked at law for fraud in the consideration as well as for fraud in the execution, since a seal is only *prima facie* evidence of a consideration.

FRAUD—STATEMENT OF OPINION.

10. A statement of an opinion is necessarily based on a fact, or carries with it such an inference of fact that it can be interpreted as a statement of fact, and where it is known to be false, and made with intent to deceive, it may be actionable.

·RELEASE—FRAUD—PLEADING.

11. A pleading that a release of a claim for negligent death was not binding because procured by fraud because defendant's attorney, having knowledge of the cause of the accident, falsely stated that defendant was not liable for decedent's death, and that plaintiff need not go to the expense of looking up the facts or seek advice, but urged plaintiff to act on the opinion, may be interpreted as charging a representation of a fact, and evidence in support thereof must be submitted to the jury.

CONTRACTS—FRAUD—RELIEF AT LAW.

12. Where a simple contract is induced by fraud, the defrauded party may rescind without the aid of equity, and may plead the fraud in defense of an action to enforce it or for damages for its breach.

SAME—SEALED INSTRUMENTS.

13. Under the statute reducing sealed instruments to the footing of simple contracts that express consideration, fraud, in the consideration of sealed instruments is recognized at law, and a defense of fraud is not exclusively an equitable defense.

ARBITRATION AND AWARD—"AWARD"—NATURE.
14. An "award" is a final judgment, both at law and in equity, and cannot be classed with contracts, sealed or unsealed.

From Multnomah: JOHN B. CLELAND, Judge.

This is an action by James H. Olston, administrator of the estate of William H. Olston, deceased, against the Oregon Water Power & Railway Company, for causing the death of plaintiff's intestate. From a judgment rendered in favor of defendant upon a directed verdict, plaintiff appeals.

Statement by MR. JUSTICE EAKIN.

Plaintiff alleges in his complaint, that W. H. Olston, a passenger, was killed on November 4, 1905, by being crowded from an overloaded street car during a panic, occasioned by the explosion of the jack or fuse on the car, and plaintiff, the administrator of his estate, brings this action for damages for his death.

Among other defenses set up by defendant is, that on the 8th day of November, 1905, plaintiff, as administrator of the estate of decedent, duly executed to the defendant a release under a seal, for the consideration of $500 and all funeral expenses of the decedent.

Plaintiff, for reply to this answer, denies execution of the release as alleged, but states affirmatively that, being induced thereto by the false, fraudulent, and unlawful misrepresentations made by defendant with intent to defraud and deceive him, he signed the release in his individual capacity, and not as administrator of the estate of decedent, and that thereafter he rescinded said settlement and tendered the return of all money, checks, and deposits, given by the defendant for said release. And for a second and separate reply plaintiff alleges, that said settlement is not binding upon the estate of the decedent or his personal representatives, for the reason that the same was made without an order of the county court authorizing the same.

Defendant demurred to the second reply, on the ground that it constitutes no defense to the allegations of the answer, and the demurrer was sustained by the court. On the trial the defendant offered in evidence the said release, which is in words as follows:

"Know all men by these presents that I, John H. Olston, administrator of the estate of William H. Olston, deceased, of Portland, in the county of Multnomah, State of Oregon, for and in consideration of the sum of five hundred and no one-hundredths dollars ($500.00) and funeral expenses of said deceased, to me in hand paid by the Oregon Water Power & Railway Company, a corporation duly incorporated and organized under the laws of the State of Oregon, the receipt of which is hereby acknowledged, for myself, my heirs, executors, and administrators hereby release and forever discharge the said Oregon Water Power & Railway Company, its successors and assigns, its officers, agents, and employees, of and from all actions, causes of action, suits, controversies, claims, damages, and demands of every name and nature, for and by reason of any matter, things, or thing from the beginning of the world to this 8th day of November, 1905, and especially from all claims, damages, and demands, accrued or hereafter to accrue arising out of an accident or injury resulting in the death of said deceased, occurring by virtue of a panic resulting from a flash occasioned by the blowing out of the jack or fuse on car No. 32 of said company, in which panic of the passengers on said car, the deceased was thrown from said car to the curb at the side of the street, suffering an injury to his head resulting in his death, which accident occurred on said car while north bound at the corner of East Eleventh and Caruthers streets in the city of Portland, Oregon, on November 4, 1905, at 7:40 o'clock P. M.

"In witness whereof, I have hereunto set my hand and seal the day and date last above written.

"Executed in the presence of:
     Charles Olston.
     G. F. Martin.          John H. Olston, [SEAL]
                    As Administrator of the Estate of
                    William H. Olston, Deceased."

Plaintiff thereupon offered to prove that said release was procured by fraudulent misrepresentations of the defendant, by which he was deceived and misled, and induced to sign the same, to which offer defendant objected, on the ground that:

"The release which was introduced in testimony here cannot be contradicted in a proceeding at law for any reason other than some manner which affected the execution of it, and for the second reason, that the equity court being the proper court for a suit for cancellation for any matters which do not concern the execution of the paper itself, and that any representations which preceded it which might bring about the execution of it are only matters which can be heard in a court of equity, and consequently all these statements are immaterial."

The court sustained the objection and excluded evidence of all representations or statements made in behalf of the defendant leading up to the settlement, and at the close of the trial the court, upon the motion of defendant, directed a verdict for defendant, for the reason that the evidence was insufficient to be submitted to the jury, and judgment was rendered for the defendant upon the verdict, and plaintiff appeals.    REVERSED.

For appellant there was a brief and an oral argument by *Mr. J. L. Taugher.*

For respondent there was a brief and an oral argument by *Mr. William T. Muir.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The second reply to the answer, namely, that the administrator cannot settle an unliquidated claim for damages without an order of the county court, involves the effect of our statute upon the common-law powers of the administrator. It is settled by *Weider* v. *Osborn*, 20 Or. 307 (25 Pac. 715), that Section 1168, B. & C. Comp., prohibiting the sale of personal property by an administrator, except upon an order of the county court

or judge thereof, applies only to tangible property and has no application to choses in action.

2. At common·law the executor and administrator has an absolute power of disposal over the whole of the personal˙ effects of decedent (1 Williams, Executors, pp. 485, 545), with full power to compromise or accept any composition or otherwise settle any debt, claim, or thing whatsoever (Id. p. 713), and Section 1211, B. & C. Comp.,· authorizing certain debts to be compounded, applies only˙ to those of insolvent debtors, and does not include the adjustment or settlement of an unliquidated claim for damages (*Washington* v. *Louisville & N. R. Co.,* 34 Ill. App. 658; (136 Ill. 49: 26 N. E. 653); *Moulton* v. *Holmes,* 57 Cal. 337; *Parker* v. *Providence & S. S. Co.,* 17 R. I. 376 (22 Atl. 284: 23 Atl. 102: 14 L. R. A. 414: 33 Am. Rep. 869). Therefore, as to an unliquidated claim for damages, the powers of an administrator remain in this State as at common law, and he may liquidate and accept settlement of such a claim without special authority from the county court.

3. Plaintiff objected to the introduction of the release in evidence, for the reason that it is only his individual release and does not bind the estate. Although it states that "for myself, my heirs, executors, and administrators, hereby release," etc., yet the circumstances under which it was given show that the payment which it acknowledges was to cover the whole liability of the defendant, not only in his own interests, but in the interest of his mother, brother, and .sisters, and that he was appointed˙ administrator of the estate because he could not individually receipt for it. It is a claim in which the individual heirs have no direct interest. The fund is the property of the estate.

4. By Sections 379, 381, B. & C. Comp., the heirs have no remedy for damages occasioned by an injury to the person of the decedent. The release is signed by "John H. Olston, as administrator of the estate of William H.

Olston, deceased," which shows an intention to bind the estate, especially as it alone was entitled to receive the money. However, if the intention is ambiguous or doubtful, it is a question of fact for the jury to determine, and the court was not in error in refusing to exclude the release on that ground.

5. Defendant contends that the release cannot be attacked at law for fraud in procuring the settlement upon which the release was executed. The general rule is that courts of equity and courts of law have concurrent jurisdiction of fraud. There are exceptions to this rule, however, based upon whether or not there is a remedy at law, and whether it is adequate. If there is a remedy at law, the fraud 'may be established in that jurisdiction; but, if that remedy is not adequate, resort may be had to a court of equity. It is said that, where a court of law can get hold of the whole matter, it is as competent to try questions of fraud as a court of equity. *Rust* v. *Larue,* 3 Litt. (Ky.) 411 (14 Am. Dec. 172). The law relieves against fraud negatively by preventing either a recovery or a defense founded upon an instrument induced by fraud. *Lamborn* v. *Watson,* 6 Har. & John. (Md.) 252, 255 (14 Am. Dec. 275). Fraud may be pleaded at law when the relief sought in a particular care is such as can be effected by a judgment. *Ankrim* v. *Woodworth,* Harr. Mich. 355; *Wheeler* v. *Clinton C. Bank,* Harr. Mich. 449; *Wing* v. *Sherrer,* 77 Ill. 200; *Slack* v. *McLagan,* 15 Ill. 242; 14 Am. & Eng. Enc. Law, (2 ed.) 172, 174.

6. At common law there is an exception to this rule, in the case of sealed instruments; but it is general as to all contracts not under seal. 1 Bigelow, Law of Fraud, 174, 175; *Sanford* v. *Royal Ins. Co.,* 11 Wash. 653 (40 Pac. 609) ; *Railway Co.* v. *Hayes,* 83 Ga. 558 (10 S. E. 350) ; *Hoitt* v. *Holcomb,* 23 N. H. 535.

7. A release at common law is required to be under seal, and therefore is a specialty in which a consideration is conclusively presumed. Leake, Contracts, 653.

8. And therefore it cannot be questioned in a law action except for fraud or deceit affecting its execution —that is, upon a plea of *non est factum*—but for fraudulent representations inducing the settlement—that is, affecting the consideration—equity alone can relieve. Bigelow, Fraud, 326, says:

"At common law, it has generally been held incompetent to a defendant sued at law on a specialty to plead that the instrument was obtained by false representations. Such defense must be made in equity; but it is otherwise of the execution of the instrument, as where the bond is misread to the obligor, or where his signature is obtained to an instrument which he did not intend to sign. In such cases, fraud may be alleged at law. The ground of this rule seems to be that to admit evidence of fraud not relating to the execution of the deed would be to allow the obligor to disprove the presumption of consideration, which presumption in the case of a specialty is an absolute one, not to be rebutted. Some courts, however, admit the plea of fraud as to the consideration, as well as to the execution of the instrument, and in other courts it is allowed by statute."

The court in *Hartsborn* v. *Day*, 19 How. (U. S.) 211, 222 (15 L. Ed. 605), which is the leading case on this question, say: "The general rule is that, in an action upon a sealed instrument in a court of law, failure of consideration, or fraud in the consideration, for the purpose of avoiding the obligation, is not admissible as between parties and privies to the deed; and, more especially, where there has been a part execution of the contract. The difficulties are in adjusting the rights and equities of the parties in a court of law, and hence, in the states where the two systems of jurisprudence prevail, of equity and the common law, a court of law refuses to open the question of fraud in the consideration, or in the transaction out of which the consideration arises, in a suit upon the sealed instrument, but turns the party over to a court of equity, where the instrument can be set aside upon such terms as, under

all the circumstances, may be equitable and just between the parties. A court of law can hold no middle course. The question is limited to the validity or invalidity of the deed. Fraud in the execution of the instrument has always been admitted in a court of law, as where it has been misread, or some other fraud or imposition has been practiced upon the party in procuring his signature and seal. The fraud in this aspect goes to the question whether or not the instrument ever had any legal existence." To the same effect are: *George* v. *Ttate*, 102 U. S. 564 (26 L. Ed. 232) ; *Papke* v. *Hammond Co.*, 192 Ill. 631 (61 N. E. 910) ; *McArthur* v. *Johnson*, 61 N. C. 317 (93 Am. Dec. 593) ; *Saunders* v. *Stotts*, 6 Ohio, 380 (27 Am. Dec. 263) ; *Truman* v. *Lore's Lessee*, 14 Ohio 144, 155; *State* v. *Jones*, 131 Mo. 194 (33 S. W. 23) ; *Vandervelden* v. *Railway Co.* (C. C.), 61 Fed. 54; *Wyche* v. *Macklin*, 2 Rand. (Va.) 426; *Phillips* v. *Potter*, 7 R. I. 289 (82 Am. Dec. 598) ; *Hartley* v. *Railway Co.*, 214 Ill. 78 (73 N. E. 398). In the case of *Lumley* v. *Wabash R. Co.*, 76 Fed. 66. (22 C. C. A. 60), the release was a sealed instrument, and the proceeding was in equity to cancel it. The lower court dismissed the complaint because there was a remedy at law, and the decree was reversed because the release, being under seal, could not be attacked at law for fraud; the court saying: "If the release had in fact been procured by fraud, he could have shown this at law; the fact that the release was under seal had been out of the way." *Hill* v. *Northern Pac. Ry.*, 113 Fed. 914 (51 C. C. A. 544, and *Papke* v. *Hammond Co.*, 192 Ill. 631 (61 N. E. 910), also makes the distinction that it is the seal that excludes the proof of fraud at law, citing these United States cases. Judge Putnam, in *Johnson* v. *M. M. G. Co.* (C. C.) 53 Fed. 569, 572, in holding that the seal is the distinguishing feature that precludes proof of fraud in the consideration, that being at common law the effect of the seal, says:

"However, it must be admitted that, on account of want of careful discrimination in the various directions

which I have suggested, late text-writers, and even courts of common law, have not always distinguished between the remedy in equity and that at common law, when fraud is alleged as an answer to a release under seal or other deed."

Defendant criticises the opinion in the case of *Wagner* v. *Nat. Life Ins. Co.,* 90 Fed. 395, 404 (33 C. C. A. 121), as being contrary to the holding of the other United States courts; but the final conclusion in that case is fully in accord with all the cases above cited on that question. The release in the Wagner case is but a receipt not under seal. Judge TAFT, who wrote the opinion, says:

"We find no reason therefore to modify the remark made by this court, speaking through Judge Lurton in *Lumley* v. *Railroad Co.,* 43 U. S. App. 476, 489: 22 C. C. A. 67, and 76 Fed. 73, where he said: 'If the release had in fact been procured by fraud, he (the plaintiff) could have shown this at law, if the fact that the release was under seal had been out of the way.' The remark was, perhaps, not necessary to the case then before the court; but in this case, where the question calls for decision, we have no difficulty in confirming it."

We find that the rule at common law permitted any writing not under seal to be attacked at law for fraud in the consideration in all cases where the relief sought could be obtained in that jurisdiction, and a bond or writing obligatory, namely, a specialy, can be attacked at law for fraud in the execution of it, but not for fraud in the consideration. In many of the states the seal has lost much of its significance by the changes which the statute has made in the common law. In some the distinction between sealed and unsealed instruments has been abolished. In 1893 Missouri dispensed with private seals entirely (Laws 1893, p. 117); also, Washington (Ballinger's Ann. Codes & St., § 4523 [Pierce's Code, § 4438]); also, Kansas and Nebraska; while others still recognize the seal as *prima facie* evidence of considera-

tion, but permit defenses at law to sealed instruments the same as to unsealed. This was the Missouri statute of 1845 (Rev. St. 1845, c. 136, art. 7, § 20) ; also, Alabama (*Giles* v. *Williams,* 3 Ala. 316 (37 Am. Dec. 692) ; New York (*Case* v. *Boughton,* 11 Wend. 106) ; Michigan (*Lumley* v. *Wabash R. Co.,* 76 Fed. 73: 22 C. C. A. 60) ; and Iowa, Indiana, and New Hampshire.

9. And our own statute modifies the common-law effect of the seal, making it *prima facie* evidence of a consideration. Section 765, B. & C. Comp., provides:

"The seal affixed to a writing is primary evidence of a consideration. In other respects there is no difference between sealed and unsealed writings, except as to the time of commencing actions or suits thereon. A writing under seal may therefore be modified or discharged by a writing not under seal or by an oral agreement otherwise valid."

And "primary evidence" is defined by Section 686, B. & C. Comp.:

"Primary evidence, is that which suffices for the proof of a particular fact until contradicted and overcome by other evidence."

Section 767, B. & C. Comp., relating to releases, provides:

"An agreement in writing, without a seal, for the compromise or settlement of a debt or controversy, is as obligatory as if a seal were affixed."

The reason that want of, or fraud in, the consideration of a specialty cannot be shown at law is that the seal conclusively imports a consideration. 1 Parsons, Contracts (9th ed.) *428; 4 Am. & Eng. Enc. Law (2d ed.), 664; 7 Am. & Eng. Enc. Law (2d ed.) 93; *Ortman* v. *Dixon,* 13 Cal. 33. And the effect of the seal by our statute, being only *prima facie* evidence of the consideration, gives to a sealed instrument no greater significance than to one unsealed which expresses the consideration on its face, and either may be attacked at law

for fraud in the consideration as well as for fraud in the execution. The following additional cases are to that effect: *Withers* v. *Greene,* 9 How. (U. S. 213 (13 L. Ed. 109) ; *Aller* v. *Aller,* 40 N. J. Law, 446; *Girard* v. *St. Louis, C. W. Co.,* 123 Mo. 358 (27 S. W. 648: 25 L. R. A. 514: 45 Am. Rep. 556; *McCarty* v. *Beach,* 10 Cal. 461; *Northern K. T. Co.* v. *Oswald,* 18 Kan. 336; *Judy* v. *Louderman,* 48 Ohio St. 562 (29 N. E. 181) ; *Huston* v. *Williams,* 3 Blackf. (Ind.) 170 (25 Am. Dec. 84). In *Paddock* v. *Hume,* 6 Or. 82, which was an action upon a bond, it is suggested that if want of consideration, or that it was obtained by fraud, had been pleaded in the answer, it would have been a good defense; and to the same effect is *Taylor* v. *Fleckenstein* (C. C.) 30 Fed. 99, which is an action on a bond under our statute. Therefore the release in question, although under seal, may be attacked in a law action for fraud in the consideration.

10. It is further contended by the defendant that, even if the statements made by plaintiff which are alleged to have been false and fraudulent were so, yet they were only statements of opinions, and not representations of fact. The sufficiency of the allegations of the fraudulent conduct contained in the reply was not raised in the lower court, nor was the evidence objected to on the ground that it tended to prove statements of opinions and not facts, and seems to be raised here by the brief for the first time. The evidence offered at the trial tended directly to prove the allegations of fraud contained in the reply, and therefore the correctness of the court's ruling in excluding the evidence depends upon whether those allegations are sufficient. They are in the following words :

"That it would be useless expense for said John H. Olston to get legal advice from any lawyer concerning the matter; that the attorney and legal adviser of the defendant company, as a person skilled in the law, had authorized tne defendant company, and its agents and officers, to tell said John H. Olston that there was no

responsibility on the part of the defendant company for said accident, or death, and that it was not liable in damages in any amount because of said accident, or death of said deceased; that if said John H. Olston, or any of the heirs at law of the said deceased, brought any action at law against the Oregon Water Power & Railway Company, the company would keep such action in court for 10 years or more, and would make it cost John H. Olston or any heir or heirs of said deceased that might bring such action, all the money he or they might be worth, and would prevent him, or them, from recovering any damages whatever."

Although the matter alleged and offered in proof as constituting the fraud is largely a matter of opinion, yet sometimes a statement of an opinion is necessarily based upon a fact or carries with it such an inference of fact that it can be interpreted as a statement of fact, and where it is known to be false and made with intent to deceive, it may be actionable. It is said, in 20 Cyc. 18:

"An expression of opinion may be so blended with statements of fact as to become itself a statement of fact. Where one of the parties has superior knowledge on the subject, his expression of an opinion which he knows he does not entertain because it is contrary to the facts may be actionable if made for the purpose of inducing another to act upon it, which he does to his injury."

To the same effect is 14 Am. & Eng. Enc. Law (2d ed.), 35. In an English case (*Smith* v. *Land & House Prop. Corp.*, 28 Ch. Div. 7, 15), in discussing this question, it is said: "It is material to observe that it is often fallaciously assumed that a statement of opinion cannot involve the statement of a fact. * * But if the facts are not equally known to both sides, then a statement of opinion by the one who knows the facts best involves very often a statement of a material fact, for he impliedly states that he knows facts which justify his opinion." In *Stebbins* v. *Eddy*, 4 Mason (U. S.) 414, 423, Fed. Cas. No. 13,342, the court say:

"It has been suggested at the bar that fraud cannot be predicated of belief, but only of facts; but this distinction is quite too subtle and refined. The affirmation of belief is an affirmation of a fact—that is, of the fact of belief—and if it is fraudulently made to mislead or cheat another, to abuse his confidence, or to blind his judgment, it is in law and morals just as reprehensible as if any other fact were affirmed for the like purpose. The law books, not to the nature of the fact averred, but to the object and design of the affirmation."

In *People* v. *Peckens,* 153 N. Y. 576, 591, 47 N. E. 883, 887, Mr. Justice MARTIN says:

"It is insisted that many of the representations to the complainant and her husband, which induced the making and delivery of her deed, were expressions of opinion, and although false, and known to be so, no liability resulted. As a general rule, the mere expression of an opinion, which is understood to be only an opinion, does not render a person expressing it liable for fraud; but where the statements are as to value or quality, and are made by a person knowing them to be untrue, with an intent to deceive and mislead the one to whom they are made, and he is thus induced to forbear making inquiries which he otherwise would, they may amount to an affirmation of fact rendering him liable therefor. In such a case, whether a representation is an expression of an opinion or an affirmation of a fact is a question for the jury. The rule that no one is liable for an expression of an opinion is applicable only when the opinion stands by itself as a distinct thing."

11. The allegations of fraudulent representations, and of which proof was offered and excluded by the court, are to the effect, among other things, that the defendant's attorney, having full knowledge of the circumstances and cause of the accident, says that the company is not liable in damages for the death of the decedent, and that plaintiff need not go to the expense of looking up the facts

or to seek advice, but urges the defendant to act upon these opinions, and this at least may be interpreted as a representation of fact, and the evidence should have been submitted to the jury upon these questions. Therefore the court erred in excluding the evidence offered by plaintiff to show fraud in the consideration for the release, and, as this necessitates the reversal of the judgment, it is unnecessary to consider the other assignments of error.

The judgment is reversed, and cause remanded.

REVERSED.

Decided October 6, 1908.

## ON PETITION FOR REHEARING.

[97 Pac. 538.]

MR. JUSTICE EAKIN delivered the opinion of the court.

12. The motion for rehearing is based largely upon the idea that the opinion in effect holds, that equitable defenses may be pleaded at law; but such is not the intent of the opinion. Counsel for defendant have attributed that effect to it upon their conclusion that the fraud relied on is "equitable fraud," probably meaning fraud over which equity has exclusive jurisdiction. The opinion is to the effect that, even if this is an instrument under seal, yet by operation of our statute, it is deprived of the solemnity formerly ascribed to it by reason of the seal. Now the seal is primary evidence of a consideration, which means that the presumption thus arising may be overcome by evidence to the contrary, and is therefore subject to defenses at law, the same as a simple contract in which the consideration is expressed. If a simple contract is induced by fraud, the defrauded party may rescind it without the aid of equity, and may plead the fraud in defense of an action to enforce it or to recover damage for its breach. 24 Am. & Eng. Enc. Law (2d ed.), 343; 14 Am. & Eng. Enc. Law (2d ed.), 158; 9 Cyc.

433; *Brown* v. *Freeman & Bynum,* 79 Ala. 406; *Stray-horn* v. *Giles,* 22 Ark. 517; *Milliken* v. *Thorndike,* 103 Mass. 382; *Irving* v. *Thomas,* 18 Me. 418.

13. And our statute having reduced sealed instruments to the footing of simple contracts that express consideration, fraud in the consideration is recognized at law and is not exclusively an equitable defense. The only authority cited by defendant in the motion that seems to conflict with this view is *Vandervelden* v. *Chicago & N. W. Ry. Co.* (C. C.) 61 Fed. 54. This case recognizes the force of the Iowa statute abolishing the effect of the seal, but ignores that fact and hold that, because the instrument is sealed, the defense of fraud is cognizable only in equity. But in *Williams* v. *Haines,* 27 Iowa, 251 (1 Am. Rep. 268), it is held that, by reason of the statute having abolished the distinction between sealed and unsealed instruments, defenses to sealed instruments going to the consideration may be pleaded at law.

Counsel seek to make a distinction between the effect of the Alabama statute, as construed in *Withers* v. *Greene,* 9 How. 213 (13 L. Ed. 109), and our own; but that statute only admits defenses to sealed instruments "as if the said writing had not been sealed." Referring to that statute, Justice DANIEL says: "By the enactment herein first cited it is obvious that specialties are divested of any force or solemnity at any time ascribed to them by reason of their having a seal annexed, and are placed with respect to all inquiries which may be instituted into the validity of their consideration precisely upon the footing of parol agreements."

The same is true of the New Jersey statute (Rev. St. 1874, p. 380, § 16), which reads:

"In any action upon an instrument in writing, under seal, the defendant in such action may plead and set up as a defense therein, fraud in the consideration of the contract upon which recovery is sought, as fully and to all intents and purposes as if such instrument were not under seal" (see *Aller* v. *Aller,* 40 N. J. Law, 446).

Thus permitting such defenses of fraud, and only such, as are permissible to unsealed instruments, and placing sealed instruments on the footing of simple contracts in that particular.

14. By our statute, quoted in the opinion, the effect of the seal is eliminated, except as to the time of commencing actions or suits thereon, and that it shall be primary evidence of a consideration and is as comprehensive as that of either Alabama, New Jersey, or Iowa. Therefore we hold that the defense pleaded is not an equitable defense, but a legal one. This in no manner conflicts with the decision in *Fire Association* v. *Allesina,* 45 Or. 154 (77 Pac. 123), or *Cohn* v. *Wemme,* 47 Or. 146 (81 Pac. 98) ; both of which cases relate to awards. The rule is that an award is a final judgment, both at law and in equity. It is said that an award is entitled to that respect which is due to the judgment of a court of last resort (2 Am. & Eng. Enc. Law (2d ed.), 794; 3 Cyc. 728), and therefore cannot be classed with contracts, sealed or unsealed.

The motion is denied.

REVERSED : REHEARING DENIED.